IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MICHAEL DARRELL ROBINSON,

      Plaintiff,

vs.                                   CASE NO. 1:11-cv-24-MP-GRJ

DETECTIVE MICHAEL POWERS,

      Defendant.

_____

## REPORT AND RECOMMENDATION

Pending before the Court are: (1) Plaintiff's Motion for Summary Judgment (Doc.19), to which Defendant Powers has filed a response, Doc. 23, and (2) Defendant Powers' Motion for Summary Judgment, Doc. 20, to which Plaintiff has filed a response. Doc. 24. The matter is now ripe for review. For the reasons discussed below, Plaintiff's Motion for Summary Judgment is due to be **DENIED**, and Defendant's Motion for Summary Judgment is due to be **GRANTED**.

## I. BACKGROUND AND FACTS

Plaintiff, Michael Darrell Robinson, proceeding *pro se*, brings this cause of action pursuant to 42 U.S.C. § 1983 against Michael Powers, an Alachua County Deputy, in his individual capacity, for violation of Plaintiff's constitutional rights, alleging false arrest, false imprisonment, and "false" prosecution. Doc. 7.  Specifically, Plaintiff alleges that Defendant arrested him without probable cause and without conducting a complete investigation.  Plaintiff also alleges false imprisonment and "false prosecution," claiming that during Plaintiff's criminal trial, Defendant gave false testimony which resulted in

Plaintiff's conviction and imprisonment for two years. *Id.*. Defendant contends that at the time he executed the sworn complaint against Plaintiff, Defendant had probable cause to arrest Plaintiff.  Thus, Defendant asserts he is not liable for violating Plaintiff's constitutional rights. Defendant further avers that he did not give false testimony at Plaintiff's criminal trial.

As a convicted sex offender, Plaintiff was required to register his address upon release from prison.   When registering as a sex offender Plaintiff listed the St. Francis House, a homeless shelter, as his permanent residence. After serving a sentence for a conviction for Attempted Lewd and Lascivious Act on a child under 16 years of age, Plaintiff was released from state prison on Friday, February 2, 2007, around midnight. Doc. 20, Ex. E, p. 7. Upon release Plaintiff admits he was homeless. *Id.*  Shortly after his release Plaintiff was taken into custody for observation under the Baker Act.  Plaintiff spent the weekend at Meridian Behavioral Center and then upon his release from Meridian on Monday February 7, he went to the St. Francis House at 413 S. Main Street. *Id.*  Plaintiff testified that he went to St. Francis house to sleep outside because he knew that people frequently slept outside the shelter rather than registering to stay in one of the rooms.  Upon arrival at the St. Francis House, Plaintiff learned from others outside the shelter that on cold nights the shelter allowed them to sleep on cots in the lobby of the shelter. Because it was going to be cold that night Plaintiff went inside at St. Francis House to inquire about signing up for "cold night shelter." *Id. p. 15.*

There is a factual discrepancy in the record concerning the conversation between Plaintiff and Ms. Danzy, the day time customer services representative. Plaintiff testified that he asked Ms. Danzy about cold night shelter, who told him to come back later to

speak to the night time customer services representative.  *Id.*  Ms. Danzy, on the other hand, testified that Plaintiff inquired about staying in a room at the shelter, rather than about cold night shelter. Doc. 20, Ex. F, pp. 10-11.  Ms. Danzy testified that she explained to Plaintiff that as a sex offender, he could not stay at the St. Francis House because of an in-house policy prohibiting registered sex offenders from registering at St. Francis House. *Id. pp.10-11*.

The basis of Plaintiff's state crime and the reason he was arrested concern the information he misrepresented on the Sexual Predator/Offender Registration Form (FDLE Form), Plaintiff was required by state law to fill-out.  After Plaintiff went to St. Francis House and after his conversation with Ms. Danzy, Plaintiff went to the Alachua County Sheriff's Office and Department of Highway Safety Motor Vehicles to register his address. Doc. 20, Ex. E,  p. 15.  Rather than listing his current status as transient, Plaintiff listed 413 South Main Street[1] as his current permanent address as of that date. FDLE Form, Doc. 23, Ex. G. Plaintiff further represented that he did not have a temporary address by checking the box on the FDLE Form that he did not have a temporary address. Plaintiff further represented on the form that his mailing address was the same as his permanent address. *Id.* Further, he left unchecked a box next to the statement: "I have no other permanent or temporary residence at this time." *Id.*

After registering his permanent address as St. Francis House, for the next two weeks, from Monday February 7 to the weekend of February 16, 2007, Plaintiff slept outside on the grounds of the St. Francis House and never registered to stay there as a resident. Doc. 20, Ex. E, pp. 17, 41. According to Plaintiff, he left the grounds of the St.

---

[1] 413 South main Street is the address for St. Francis House in Gainesville, Florida.

Francis House each day by 6:00 a.m. to go to work and then returned after 6:00 p.m to sleep outside on the grounds. *Id.*

During all relevant periods of time Defendant Powers was a Detective in the Criminal Intelligence Bureau of the Alachua County Sheriff's Office, assigned to investigations associated with sexual predators and sexual offenders, including monitoring compliance with Fla. Stat. §943.0435, which requires sexual offenders and predators to register their address with the Florida Department of Law Enforcement. Doc. 20, Ex. H.  According to his affidavit, on February 19, 2007, Detective Powers reviewed Plaintiff's Sex Offender Registration Form dated February 5, 2007 and recognized the address 413 S. Main Street as the address of St. Francis House. *Id.* ¶¶3-4.  Detective Powers knew that St. Francis House had a policy prohibiting convicted or registered sex offenders from residing at the shelter. *Id.*  In addition to confirming the registration on Plaintiff's Sex Offender Registration Form, Detective Powers also confirmed with the Department of Highway Safety and Motor Vehicles that Plaintiff had also registered his permanent residence as 413 S. Main Street, Gainesville, Florida. *Id.,* ¶5.

Plaintiff and Defendant offer differing accounts of the details of what occurred when Detective Powers went to the St. Francis House to investigate whether Plaintiff's permanent residence was at St. Francis House, as represented on the FDLE Form. Detective Powers avers that he went to St. Francis House and spoke with Ms. Danzy. In addition to asking Ms. Danzy whether "Michael Robinson" was staying there, Detective Powers says he showed Ms. Danzy a photo of Plaintiff. *Id.* ¶6. Detective Powers contends that after looking at the photo and consulting her list of residents, Ms. Danzy

told Detective Powers that Plaintiff was not residing at the St. Francis House, nor had he ever been. *Id.*

Plaintiff, on the other hand, alleges that Detective Powers never showed Ms. Danzy Plaintiff's picture. Doc.7, §V ¶1. In Plaintiff's view, the failure to show Ms. Danzy his picture was material because Plaintiff contends Ms. Danzy and Plaintiff knew each other growing up but Ms. Danzy knew Plaintiff by a different last name than "Robinson." *Id.* Plaintiff argues this failure is important because if Detective Powers had shown Plaintiff's photograph to Ms. Danzy, Ms. Danzy would have recognized Plaintiff and told Detective Powers that Plaintiff was sleeping on the grounds at St. Francis House. At her deposition in this case Ms. Danzy testified that she did not remember whether she spoke to Detective Powers. Doc. 20, Ex. F. p. 15.  However, at Plaintiff's criminal trial, Ms. Danzy testified that she remembered talking to Detective Powers but did not remember the specifics of the conversation. *Id.*, Ex. L.

Based upon the information in Plaintiff's FDLE Form representing that Plaintiff's permanent residence was 415 Main Street, and Ms. Danzy's representation to Detective Powers that Plaintiff did not reside there, Detective Powers prepared a sworn complaint against Plaintiff for violation of Fla. Stat. §943.0435. *Id., Ex. H,* ¶7,  Ex. I The criminal complaint was approved by Detective Powers' supervisor on February 26, 2007, and submitted to the State Attorney's Office. Doc. 20, Ex. J. A capias was signed by Judge Peter K. Seig on May 8, 2007, and Plaintiff was arrested pursuant to the warrant on May 10, 2007.

On November 14, 2007 Plaintiff was found guilty in a non-jury trial of violating Fla. Stat. §943.0435 and then sentenced to a term of 41.33 months imprisonment. *Id.*

Ex. C. Plaintiff appealed to the First District Court of Appeal and on March 13, 2009, the

First District reversed Plaintiff's conviction, finding that the evidence was insufficient to

prove that Plaintiff knowingly and intentionally failed to report a change in residence. *Id.*

Ex. D.

## II.  STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary

judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of

law." In applying this standard, the Court must examine the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits and other

evidence in the record "in the light most favorable to the non-moving party." *Samples on*

*Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme

Court held in *Celotex Corp. v. Catrett,* the moving party bears the initial burden of

establishing the nonexistence of a triable issue of fact. 477 U.S. 317 (1986). If the

movant is successful on this score, the burden of production shifts to the non-moving

party who must then come forward with "sufficient evidence of every element that he or

she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-

moving party may not simply rest on the pleadings, but must use affidavits, depositions,

answers to interrogatories, or other admissible evidence to demonstrate that a material

fact issue remains to be tried. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).

In meeting this burden, the nonmoving party "must do more than simply show that there

is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  An action is void of a material issue for

trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587.

### III. DISCUSSION

Defendant requests the Court to enter summary judgment in his favor on two grounds. First, Defendant contends that he is entitled to qualified immunity with regard to Plaintiff's claims that Defendant violated Plaintiff's constitutional rights by submitting a sworn complaint for his arrest without probable cause.  Alternatively, Defendant argues that construing the facts in a light favorable to Plaintiff, the undisputed facts fail to state a claim for relief as a matter of law.

Plaintiff requests summary judgment in his favor arguing that there is no material issue of fact that Detective Powers lied and therefore he is entitled to summary judgment because there was no probable cause for the arrest. The Court will first address Defendant's motion for summary judgment based upon qualified immunity because qualified immunity is a threshold issue and if applicable will resolve the pending motions.

### A.    *Defendant's Motion For Summary Judgment*

Qualified immunity provides "complete protection for government officials sued in their individual capacity as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.2d 1160, 1170 (11th Cir. 2001), *quoting Harlow v. Fitzgerald*, 427 U.S. 800, 818 (1982). Qualified immunity shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law," allowing government

officials to carry out their discretionary duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity analysis turns on whether the actions of the government official are objectively reasonable. *Harlow*, 427 U.S. at 815-19. In this two part analysis, the defendant government official must prove that he or she was performing duties within the scope of his or her discretionary authority at the time of the alleged violation.[2] *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990). If the Defendant satisfies this requirement, the burden then is on the plaintiff to show that the defendant violated a constitutional right and that the constitutional right the defendant violated was "clearly established" at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In the context of qualified immunity, "arguable probable cause, not the higher standard of actual probable cause," governs the inquiry. *Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (internal citations omitted). Arguable probable cause exists when "under all of the facts and circumstances, an officer reasonably could—not necessarily would— have believed that probable cause was present." *Crosby v. Monroe County*, 394 F.3d 1328, 1332-33 (11th Cir. 2004).  Importantly, the inquiry is upon the facts and circumstances known to the officer at the time of the officer's conduct, not those known by the plaintiff at the time of the officer's conduct or those later known by the court. *Jones*, 174 F.3d at 1283 n.4.  In short, qualified immunity applies as long as arguable probable cause exists, regardless of whether actual probable cause exists.

---

[2] Because it is undisputed that the events in this case concern Defendant's conduct in performing duties as an Alachua County Detective assigned to sex offender matters Detective Powers was within the scope of his discretionary authority and as such, the burden is on the Plaintiff to prove that Defendant violated a clearly established constitutional right.

There is no question that an arrest without probable cause violates the Fourth Amendment. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).  A police officer has probable cause to arrest when, at the moment of arrest, the officer has knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been or is being committed by the person. *Pickens v. Hollowell*, 59 F.3d 1203, 1205 (11th Cir. 1995). As probable cause "does not deal with hard certainties, but with probabilities," police officers may formulate certain "common-sense conclusions about human behavior." *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983).

An arresting officer is required to conduct a reasonable investigation to establish probable cause. *Rankin v. Evans*, 133 F. 3d 1425, 1435 (11th Cir. 1998). The officer cannot conduct a biased investigation, choose not to obtain easily discoverable facts, or ignore relevant information that would affect the existence of probable cause. *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004). Additionally, the Fourth Amendment does not allow the officer to present materially false and reckless statements in support of an arrest warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). The law does not require, however, that every conceivable step be taken at whatever cost to eliminate the possibility of convicting an innocent person. *Id; Rankin*, 133 F.3d at 1437.

In the instant case, the undisputed facts show that Detective Powers had at least arguable probable cause that Plaintiff violated Florida's sex offender registration law by failing to list either an accurate permanent address or by failing to list a location he was

occupying during the time in which he did not have either a permanent or temporary address.

Section 943.0435(4)(b), Florida Statutes, requires "a sexual offender who vacates a permanent residence and fails to establish or maintain another permanent or temporary residence" to report in person to the Sheriff's office within 48 hours and "provide an address for the residence or other location that he is or will be occupying during the time in which he fails to establish or maintain a permanent or temporary residence." FLA. STAT. §943.0435(4)(b). According to Fla. Stat. §943.0435(1)(c), "temporary residence" and "permanent residence" have the same meaning as detailed in Fla. Stat. §775.21. FLA. STAT. §943.0435(4)(1)(c); FLA. STAT. §775.21(2). A "temporary residence" means "a place where the person abides, lodges, or resides for a period of 5 or more days in the aggregate during any calendar year and which is not the person's permanent address . . ." FLA. STAT. §775.21(2)(g). A "permanent residence" means "the place where the person abides, lodges, or resides for a period of 5 or more consecutive days." FLA. STAT. §775.21(2)(f). Failure to register as required in §943.0435 is a third degree felony. FLA. STAT. §943.0435(9)(a).

Thus, in order to comply with Florida's sex offender statute Plaintiff was required to do one of the following. If he had a permanent address he was required to disclose it. There is no dispute that St. Francis House was not Plaintiff's permanent residence. Second, because Plaintiff did not have a permanent address he was required to list either his temporary address or in the event he did not have a temporary address because he was homeless, he was required to report the address of the location he was occupying. Plaintiff failed to comply. Plaintiff misrepresented that his permanent

address was 415 Main Street, when at best it is undisputed he was sleeping outside of the shelter because of cold weather for about two weeks. Plaintiff should have disclosed that he did not have a permanent or temporary address and that the location where he was staying was outside the shelter at St. Francis House.  Plaintiff failed to do so. Whether Plaintiff failed to do so intentionally, recklessly or through ignorance has no bearing on the issue of qualified immunity and whether Detective Powers had arguable probable cause that Plaintiff violated the sex offender registration statute.

The following undisputed facts support this conclusion. Upon release from prison, Plaintiff was homeless. Doc. 20, Ex. E, p.7.  Plaintiff was required to register as a sex offender in accordance with Fla. Stat. §943.0435. Plaintiff registered his permanent address as 413 S. Main Street – the address of St. Francis House.  This address – 413 S. Main Street – was not Plaintiff's permanent address and instead was the address of the location where Plaintiff was staying during the period in which he had no established permanent address. *Id.*  pp. 7, 11, 14-15. Plaintiff testified that he was homeless and slept outside on or around the grounds of the shelter, and that he never stayed in a room in the shelter nor did he even ask about such a room. Indeed, as a convicted sex offender Plaintiff was prohibited by the rules at St. Francis House from registering and staying there as a resident. Fla. Stat. §943.0435(4)(b) required Plaintiff to "provide an address for the residence or other location that he is or will be occupying during the time in which he fails to establish or maintain a permanent or temporary residence." FLA. STAT. §943.0435(4)(b). Plaintiff failed to disclose that he did not have a permanent or temporary residence on the FDLE Sex Offender Registration Form. There are two places on the form where Plaintiff should have done so. First, the "Previous Permanent

Address" section contains a box for the offender to check "I am vacating this residence and have no other permanent or temporary residence as of this date _____." Second, the "Current Permanent Address" section of the form contains another box for the sex offender to check stating "I have no other permanent or temporary residence at this time."  Plaintiff left both boxes blank.

Detective Powers was told by Ms. Danzy, the customer service representative at the St. Francis House, that Michael Robinson, the name identified on the FLE form, was not registered at St. Francis House. Detective Powers was not required to conduct any further inquiry. He had received reliable information from the individual at St. Francis House with knowledge of the names of the registered guests and was told that Plaintiff was not one of them. This information was sufficient to establish at least arguable probable cause that Plaintiff had not complied with the statute. Whether Plaintiff was sleeping there on the grounds is irrelevant because Detective Powers was not investigating whether the St. Francis House was a "location where Plaintiff was occupying" in the absence of a permanent or temporary residence but rather whether the St. Francis House was Plaintiff's permanent residence. The shelter was not his permanent address. Therefore, because there is no material dispute that St. Francis House was not Plaintiff's permanent residence Detective Powers had probable cause. Accordingly, Plaintiff cannot, and has not, demonstrated that Detective Powers violated a clearly established constitutional right.

Plaintiff's argument that Detective Powers violated his constitutional rights is based upon two events. First, Plaintiff argues that Detective Powers should have shown his photograph to Ms. Danzy. Secondly, Plaintiff points to the fact that his conviction

was overturned on appeal. Neither argument impacts the Court's conclusion that Detective Powers is entitled to qualified immunity.

With regard to Plaintiff's successful appeal of his state court conviction the outcome of the criminal case has little bearing on the question of whether there was probable cause. Contrasted with the high standard of proving a crime "beyond a reasonable doubt" which the government must satisfy in a criminal trial, the much lower probable cause standard applies to arrests. *United States v. Pantojo-Soto*, 739 F.2d 1520, 1524 n. 7 (11th Cir. 1984), "'Probable cause' defines a radically different standard than beyond a 'reasonable doubt.' An arrest must stand upon more than suspicion, but the arresting officer need not have in hand evidence sufficient to obtain a conviction." *Id.* Indeed, if that was the standard every defendant acquitted of a criminal charge would have a Fourth Amendment claim for arrest without probable cause.

Plaintiff also contends that Defendant failed to conduct a complete investigation of Plaintiff's location by not showing Ms. Danzy a photograph of the Plaintiff in the course of his investigation.[3] However, even assuming that Ms. Danzy would have recognized Plaintiff as a childhood friend and would have told Defendant that she had seen Plaintiff at the St. Francis House, as Plaintiff contends, this would not have changed the outcome of Defendant's investigation. Simply because Ms. Danzy may have seen the Plaintiff at the shelter does not evidence that the St. Francis House was Plaintiff's permanent residence, as Plaintiff represented on the sex offender registration form.  It is undisputed – regardless of whether Ms. Danzy was or was not shown

---

[3] Defendant, via sworn affidavit, asserted that he did show Ms. Danzy a photograph of Plaintiff, but for purposes of summary judgment, the Court need not assume the accuracy of Defendant's recital of events because the Court concludes that even if the photograph was not shown to Ms. Danzy there was still sufficient probable cause to support the charge.

Plaintiff's photograph – that Plaintiff was not listed in the daily roster as a resident or that Ms. Danzy would have told Detective Powers that Plaintiff was residing there. Indeed, Ms. Danzy's own testimony debunks Plaintiff's argument. Ms. Danzy testified that on the one occasion that she saw Plaintiff at the St. Francis House she specifically told Plaintiff that he could not reside at the shelter. According to Ms. Danzy, Plaintiff then left and she never saw him again. Doc. 20, Ex. F, pp. 10-11. Notably, Plaintiff's own testimony is consistent with these events. Plaintiff admitted that he saw Ms. Danzy only once and on that occasion he only remembers she told him "something" which led Plaintiff to believe that "maybe she probably thought it [sic] was asking about a room, but I wasn't asking about a room." *Id.*, Ex. E, pp. 27, 31. Consequently, Plaintiff's contention that the outcome would have been different if Detective Powers had shown Ms. Danzy Plaintiff's photograph has no factual support on this record.  Further, none of the disputed facts surrounding Defendant's investigation support Plaintiff's claim that Defendant intentionally or recklessly made false statements or omissions improperly affecting the determination of probable cause.

While further investigation may have revealed that Plaintiff was sleeping outside of the shelter, "the test is not whether Defendant [Powers] could have conducted a more reasonable investigation. Rather, the standard is whether a reasonable officer in that situation could have believed that probable cause existed to arrest Plaintiff." *Wilson v. Zellner*, 200 F. Supp.2d 1356, 1363 (M.D. Fla. 2002). Had Plaintiff checked either of the boxes on the FDLE Form indicating that he had no permanent or temporary residence, further investigation into whether Plaintiff was "occupying" that location may have been necessary. But as Plaintiff did not check those boxes, it was reasonable that Detective

Powers' investigation focused upon verifying Plaintiff's claimed permanent address through questioning of the customer services representative and not investigation of where Plaintiff was actually located.  Plaintiff cannot point to any clearly established federal law that would have required Detective Powers to have investigated any further to determine whether the St. Francis House was Plaintiff's permanent residence once he obtained reliable information that Plaintiff was not on the roster at the St. Francis House as a resident.

Accordingly, for these reasons, the Court concludes that Detective Powers is entitled to qualified immunity as to Plaintiff's claims that his Fourth Amendment rights were violated because he was arrested without probable cause.

Plaintiff also claims that Detective Powers is liable for false arrest, false imprisonment and false prosecution.  However, independent of the fact that Defendant is entitled to qualified immunity Defendant is entitled to summary judgment on these claims because Defendant had probable cause or at least arguable probable cause to procure an arrest warrant for Plaintiff and therefore Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law.

Turning first to the claim for false arrest, Plaintiff cannot base a valid Fourth Amendment claim on an arrest made pursuant to a valid warrant, "The Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 143-145 (1979). Further, as the officer securing the arrest warrant, Defendant brandishes the qualified immunity shield unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its

existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986). There is nothing in the record to indicate that Defendant's probable cause determination was objectively unreasonable.  Consequently, Plaintiff's false arrest claim fails as a matter of law.

The same reasoning applies to Plaintiff's false imprisonment claim.  "The courts of Florida have equated the torts of false arrest and false imprisonment, stating that the difference is one of terminology." *Jackson v. Byscane Medical Center, Inc.*, 347 So. 2d 721, 723 (Fla. 3d DCA 1977), *citing Johnson v. Weiner*, 155 Fla. 169, 19 So. 2d 699 (1944); *also see Rankin*, 133 F.3d at 1431 n.4 (11th Cir. 1998). As discussed above, Plaintiff was arrested pursuant to a valid warrant (i.e., one supported by probable cause) and therefore Defendant has the same qualified immunity that he has in the false arrest context.

Lastly, Plaintiff's claim of malicious prosecution fails as well.[4]  A malicious prosecution claim under 42 U.S.C. §1983 exists where (1) there is a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor, and (4) caused damage to the plaintiff accused. *Wood v. Kessler*, 323 F.3d 872, 882 (11th Cir. 2003), *citing Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998). Plaintiff's claim fails the first prong. Detective Powers neither arrested nor caused the continuation of Plaintiff's prosecution. Detective Powers' role ended when he submitted his sworn complaint to the State Attorney's Office. The State Attorney's Office has exclusive discretion

---

[4] Plaintiff's claim of "false prosecution" is not cognizable under 42. U.S.C. §1983. The Court therefore construes this claims as a claim for malicious prosecution.

regarding the decision of whether to initiate or continue a criminal prosecution.[5] *State v. Gonzales*, 695 So.2d 1290, 1292 (Fla. 2d DCA 1997), *citing State v. Brown*, 416 So.2d 1258, 1259 (Fla. 4th DCA 1982); *Wilson v. Renfroe*, 91 So.2d 857, 859 (Fla. 1956). Therefore, because Detective Powers' had nothing to do with the actual prosecution of Plaintiff, the claim for malicious prosecution fails.

Further, Plaintiff has failed to establish that there was a lack of probable cause and has failed to demonstrate malice on the part of the Defendant. Plaintiff alleges that Defendant gave false testimony at Plaintiff's criminal trial.  According to Plaintiff, Defendant falsely testified that Defendant showed a photo of Plaintiff to Ms. Danzy. As support, Plaintiff contends that Ms. Danzy said that Defendant did not show her a photo of Plaintiff.  Even viewing the record in the light most favorable to Plaintiff the record does not support this assertion. Ms. Danzy testified only that she could not remember if Defendant had showed her a photo of Plaintiff. Doc. 20, Ex. L., p. 41.  Ms. Danzy did not testify, as Plaintiff suggests, that Detective Powers did not show her Plaintiff's photograph. At best the testimony could be characterized as conflicting on this point but cannot be characterized as false testimony. Further, Plaintiff's allegation that Defendant testified falsely regarding the FDLE Form is simply unsupported by the record. *Id.* pp. 24-26.

---

[5] Although Plaintiff's malicious prosecution claim does not extend to the state prosecutors involved in his state court criminal proceedings, claims against those officials would also be barred by prosecutorial immunity. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). ("Prosecutors have absolute immunity from civil damages suits under section 1983 for actions intimately associated with the judicial phase of the criminal process."). See *Barr v. Gee*, No. 11–10104, 2011 WL 3585815, at *8 (11th Cir Aug. 16, 2011)(per curiam)("A prosecutor is absolutely immune from suit for all actions that he takes while performing his function as an advocate for the government.").

Accordingly, viewing the record in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate that Detective Powers knew or should have known that the actions he took would violate Plaintiff's constitutional rights or that Detective Powers acted with the malicious intention to cause a deprivation of Plaintiff's constitutional rights. Therefore, Plaintiff's claim for malicious prosecution fails as a matter of law.

**B.  *Plaintiff's Motion For Summary Judgment***

Although Plaintiff's Motion for Summary Judgment is due to be denied because the Court has determined that Defendant is entitled to qualified immunity, the Court will, nevertheless, briefly address the argument advanced by Plaintiff.

Plaintiff argues that he is entitled to summary judgment because there was no probable cause for his arrest for at least three reasons: (1) Plaintiff registered as a sex offender on the next available business day after his release from prison and therefore there is no disputed issue that he registered as a sex offender within 48 hours as required by Florida law. (2) The definition of permanent residence and temporary residence are the same under the sex offender registration statute and therefore whether he was at the St. Francis House permanently or temporarily makes no difference. (3) Detective Powers lied that he interviewed Ms. Danzy and therefore there was no support or investigation supporting the sworn affidavit Detective Powers filled out in support of the criminal complaint.

The issue of whether the Plaintiff registered as a sex offender within 48 hours after his release from prison has no bearing upon whether the Defendant violated the sex offender registration statute. The Plaintiff was not charged with nor prosecuted for failing to register within 48 hours. Rather, Plaintiff was prosecuted for failure to comply

with the sexual offender registration requirements of section 943.0435(4) Florida

Statutes (2006). Thus, whether the Plaintiff filed the registration within 48 hours is

irrelevant and immaterial.

Secondly, whether the St. Francis House, a homeless shelter, constitutes a

permanent residence is also beside the point. The issue is whether the St. Francis

House was Plaintiff's permanent residence. On this issue there is no dispute. Plaintiff

never was registered at St. Francis House as a resident. He was not registered as a

resident because sex offenders were not permitted to register on the roll there as

residents. Further, Plaintiff concedes that he was aware of this and therefore never

attempted to obtain a room there.

Lastly, the determination of whether Detective Powers had a sufficient factual

basis for his investigation turns upon whether he interviewed Ms. Danzy (or another

customer service representative at St. Francis House) to determine whether Plaintiff

was a permanent resident. Plaintiff says that Detective Powers lied because Ms. Danzy

testified she never spoke to Detective Powers. As discussed above, that is not what is

reflected by the record. At Plaintiff's criminal trial Ms. Danzy testified that she did speak

with Detective Powers but did not remember the specifics of the conversation. At her

deposition in this case (which was taken four years later) Ms. Danzy testified that she

did not remember whether she spoke to Detective Powers.  Ms. Danzy did testify,

however, that if Detective Powers had asked her if Plaintiff was staying at the St.

Francis House she would have told him that Plaintiff was not staying there because she

knew Plaintiff was a sex offender and sex offenders were not allowed to reside at St.

Francis House. This testimony does not contradict Detective Powers' affidavit he which

he avers that he asked Ms. Danzy whether Plaintiff was residing at the St. Francis

House and was told by Ms. Danzy, after she checked her list of residents, that Plaintiff

was not residing at St. Francis House nor had her ever resided there.  Simply put,

contrary to Plaintiff's suggestion Ms. Danzy never denied or refuted Detective Powers'

testimony that he interviewed her. Thus, there is no factual basis for Plaintiff's claim that

Detective Powers "lied." Indeed, this entire case has been based upon Plaintiff's

unsupported speculation that Detective Powers never went to St. Francis House to

verify whether Plaintiff resided there. Plaintiff has failed to present any proof or evidence

to support this assertion and, accordingly, because there is no material factual dispute

on the issue of whether Detective Powers' interviewed Ms. Danzy as part of his

investigation of whether Plaintiff was a permanent resident at the St. Francis House,

Plaintiff is not entitled to summary judgment on his claim that he was arrested without

probable cause. Conversely, because there is no dispute that Detective Powers was

told by Ms. Danzy that Plaintiff did not reside at St. Francis House, Defendant is entitled

to summary judgment in his favor with regard to Plaintiff's claim that Defendant violated

Plaintiff's constitutional rights by arresting him without probable cause.

## IV.  <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that: (1) Plaintiff's

Motion for Summary Judgment (Doc. 19) should be **DENIED** and (2) Defendant Powers'

Motion for Summary Final Judgment (Doc. 20) should be **GRANTED**, the clerk should

enter final judgment in favor of Defendant and close the file.

**IN CHAMBERS** this 23rd day of May, 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.